[Civ. No. 1206.   Fourth Appellate District.—June 2, 1933.]

JOHN ELLIOTT NEWMAN, Respondent, v. WILLIAM F. STEUERNAGEL et al., Appellants.

George W. Nilsson, T. N. Harvey, J. W. Heard, Jr., Frederick E. Hoar and Monta W. Shirley for Appellants.

Conron & Conron and Borton & Petrini for Respondent.

BARNARD, P. J.—This is an action for damages for personal injuries, which arose under the following circumstances. The defendant Cypress Petroleum Company was operating an oil lease in Kern County, some miles from the city of Taft. The defendant Steuernagel was employed by this company as its foreman upon said lease, it being understood that he should use his own automobile when he needed

a car for company service. On April 14, 1930, the defendant Andreola, who was not employed by the oil company, was visiting Steuernagel at the lease. Steuernagel decided to go to Taft to order a part for a Ford tractor in use on the lease, and Andreola accompanied him as a guest in his car. On arriving at the Ford garage in Taft Steuernagel found the parking space in the immediate vicinity entirely occupied by other automobiles parked in a slanting position head-on toward the curb. He stopped his car in front of the Ford garage, parallel to the curb but beyond the cars thus parked against the same, and a short distance to the rear of a bakery truck which was similarly double-parked in front of a bakery which adjoined the Ford garage. He stopped his motor and went into the garage, saying nothing except "I will be back", and leaving Andreola sitting in the passenger's position in the front seat of his car. A "short while" later, Andreola also went into the garage to make a purchase for himself. Steuernagel then said to Andreola, "You got to go back in the car. We can't leave the car in the street alone". Thereupon, Andreola proceeded to make the purchase he desired and then went back to the car and sat there. In the meantime, the plaintiff, who was employed by the bakery and who had left the bakery truck in the position referred to, was engaged in bringing out bakery goods and loading them into the truck through a door in the rear end thereof. After Andreola was again seated in the automobile, two men in a car which was parked between the curb and Steuernagel's car desired to leave. They "hollered, blew the horn and said, 'Hey, move the car. I got to get out of here' ". Andreola replied: "Just a minute please"; and turned his head and called Steuernagel by his first name. Steuernagel did not answer and did not come out. As to what next occurred Andreola testified: "Well, then they holler at me kind of nasty and kind of swearing at me and I felt kind of cheap myself, I was kind of ashamed for them, I know they got a right to come out so I decided to move over at the steering wheel and move the car for Mr. Steuernagel." Andreola then moved over into the driver's seat and started the car. The car jumped ahead, he got excited and in trying to put on the brake with his foot, stepped on the gas throttle instead, and the car struck the plaintiff who was then standing in the rear

oɪ the bakery truck, causing the injuries complained of. In this action which ensued the jury returned a verdict against all three defendants and two of them have appealed from the judgment which followed.

Assuming that the question as to whether Steuernagel was negligent in stopping his car where he did was one of fact for the jury, the first question that should be decided is whether there is any evidence which will support an implied finding by the jury that this negligence was the proximate cause of the injury to the plaintiff. Since certain acts of Andreola intervened, this depends upon whether these subsequent acts should have been anticipated by Steuernagel. The only evidence material to this point is that Steuernagel double-parked his car, leaving Andreola sitting in it but without giving him any instructions; that when Andreola went into the store Steuernagel told him to go back because the car must not be left alone; that the car was in the way of another driver who wanted to come out from the curb; that Andreola, after calling to Steuernagel without result, decided to move the car, and that in moving it he crashed into the truck in front.

█ It is the general rule that an original act of negligence is not a proximate cause of an injury when the same directly results from an intervening act of another party which was one not to be reasonably anticipated by the first party as reasonably likely to occur and follow through and from his own act. The general rules are thus expressed in 19 Cal. Jur.:

"An independent wrongful act, to constitute the proximate cause by displacing the original primary cause, must bɔ so disconnected in time and nature as to make it plain that the damage was in no way a natural or probable consequence of the original wrongful act or omission. If a wrongdoer could have anticipated that an intervening act might, in natural and ordinary sequence follow the original act of negligence, he is not released from liability by reason of the intervening cause." (Page 570.)

"In order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must not only appear that the injury is the natural and probable consequence of the negligent or wrong-

ful act but that it ought to have been foreseen in the light of attendant circumstances.'' (Page 562.)

In 22 Ruling Case Law, page 134, the rule is thus stated: ''It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve him. On the contrary the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious result. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. The question always is, was there any unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? The test is to be found in the probably injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.''

In *Hale* v. *Pacific Tel. & Tel. Co.*, 42 Cal. App. 55 [183 Pac. 280, 281], the court said: ''The rule, as we understand it, applicable to such cases, is that where the original negligence of a defendant is followed by an independent act of a third person which results in a direct injury to a plaintiff, the negligence of such defendant may, nevertheless, constitute the proximate cause thereof if, in the ordinary and natural course of events, the defendant should have known the intervening act was likely to happen; but if *the intervening act constituting the immediate cause of the injury* was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate such further acts, and the original

negligence cannot be said to be the proximate cause of the final injury." (Italics ours.)

In *Reynosa* v. *Pickwick Stages System,* 115 Cal. App. 383 [1 Pac. (2d) 548, 549], it is said: "An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury, and but for which the injury would not have occurred. The law will not look back from the injurious consequences beyond the last efficient cause, where a responsible and intelligent person has intervened, if the chain of events is so broken that they become independent and the result cannot be said to have probably and naturally accrued from the primary cause, or to have been anticipated."

In *Katz* v. *Helbing,* 205 Cal. 629 [271 Pac. 1062, 1064, 62 A. L. R. 825], the court said: " . . . the acts of a defendant are deemed the proximate cause of such consequences as a reasonably prudent man would anticipate as likely to result therefrom. (Citing cases.) Intervening wrongful acts of third persons, but for which injuries complained of would not have been received, ordinarily break the chain of causation, because they are not to be anticipated as probable consequences, but are occasional and exceptional results."

The respondent concedes the rule as stated but insists that the evidence discloses that Steuernagel should have anticipated the result that actually happened and that the jury was justified in so finding. It is argued that he parked his car where he knew it would have to be moved and placed Andreola in control of the vehicle for that purpose; that the very event that was anticipated actually happened and at the hands of the person designated to perform the act; that Andreola "did nothing other than that which he was bid to do, as he was requested to do it"; and that his act was therefore not an efficient intervening cause which broke the chain of causation.

In effect, the argument is that Steuernagel authorized and expected Andreola to move the car and, therefore, the moving of the car should have been and was anticipated. However, as we understand the rule laid down by the above and other authorities, the thing that should have been anticipated in order to take away the intervening character of a subsequent negligent act, is a thing that would naturally

make the original act effective in causing an injury. Even if Steuernagel should have foreseen that a necessity would arise for moving the car and should have further foreseen that Andreola would take that action, the essential question here is whether he should also have foreseen that Andreola would move the car in such a manner as to crash into the truck ahead. ■ While it is not necessary that the precise accident that happened be anticipated, it is essential that the defendant shall have had reason to anticipate an accident of the general nature of the one that occurred. (*Royal Indemnity Co.* v. *Public Ser. Corp.*, 42 Cal. App. 628 [183 Pac. 960].) The general nature of the accident with which we are here concerned is one arising from the moving of the vehicle left in the street. It is not a case where a car is so parked, on a hill or under other circumstances, that the manner of parking may directly lead to its moving and causing damage. The moving of this car could come only from another intentional act, and such moving as might be required to permit a blocked car to come out from the curb would be only a few feet, and is a thing which in ordinary experience can be and usually is done without injurious result. It cannot be said that a prudent and experienced man, knowing that he was double-parking his car and that a truck was likewise double-parked a few feet ahead and in plain sight, if he had stopped to think of the matter at all, and if he had expected a guest sitting in the car to move the same, would have or should have anticipated that his parking in that manner might reasonably result in the guest moving the car with such negligence as to crash into that truck. One is bound to anticipate what usually happens but not the unusual or what is unlikely to happen. (*Bush* v. *Weed Lumber Co.*, 63 Cal. App. 426 [218 Pac. 618].) The injury to the plaintiff came, not as a natural, logical and usual result of the manner in which this car was parked, but from another and independent act of negligence. We think the evidence conclusively shows that the chain of causation was broken by the intervening negligence of a third person which was not to be reasonably anticipated, and that Steuernagel's negligence in parking the car, if any, was not the proximate cause of the accident. A contrary finding by the jury is not supported by the evidence.

■ It must next be determined whether either of these appellants may be held responsible for the negligent acts of Andreola in moving the car. It is undisputed that Andreola had never been employed by the Cypress Petroleum Company and that he accompanied Steuernagel on this occasion as his guest. The respondent argues that Steuernagel had authority to employ men, that he expressly employed Andreola on this occasion when he told him to watch the car which was being used on a business errand, and that this request, coupled with the facts that an emergency existed and that Andreola rendered the service in the presence of Steuernagel, makes him a servant of the oil company and that company liable for his negligence.

While there is evidence that Steuernagel was authorized to hire men at the lease being operated by the company, there is no evidence that the oil company had anything to do with Steuernagel's car other than the fact that they had authorized Steuernagel to himself use the car on company business. While the respondent argues that Steuernagel, as the servant of the company, employed Andreola to watch the car, the only evidence is that Steuernagel had Andreola with him as his friend and guest; that he left him sitting in the car; that he expected to be gone only a minute; that when Andreola entered the store he told him "You got to go back in the car. We can't leave the car in the street alone"; that Andreola did not go at once but made a purchase and went when he had finished that; that Steuernagel had not asked Andreola to move the car; that when the other parties wanted to get out from the curb Andreola asked them to wait and called to Steuernagel; and that when Steuernagel did not appear, he "*decided to move over at the steering wheel and move the car for Mr. Steuernagel*". Not only is this evidence not sufficient to disclose an actual employment establishing a relation of master and servant but it rather definitely shows that Andreola was not employed for the purpose in question, that when told to go back to the car he completed his own business and went when he got ready, that he expected Steuernagel to attend to the car and called to him for that purpose, and that in finally moving the car he was actuated by his own decision and not by any employment, express or implied. Without doubt he moved the car in part as

an accommodation to the men who wanted to get their car out and in larger part as an act of friendship for Steuernagel. (*Stoddard* v. *Fiske*, 35 Cal. App. 607 [170 Pac. 663].)

█ The respondent also insists that, irrespective of any express employment, the Cypress Petroleum Company is liable for the acts of Andreola under the general rule that a master is liable for the act of a stranger who assists an employee in the course of his employment, either (1) in an emergency or (2) when the stranger acts at the solicitation and in the presence of the servant. It is argued that this case is practically analogous to the case of *Kirk* v. *Showell, Fryer & Co.*, 276 Pa. 587 [120 Atl. 670]. In that case it was held that the jury could properly infer an implied authority on the part of a servant to obtain help where the size and weight of an object were such as to require aid in handling the same, where the servant could not leave the goods in order to obey a police officer's order to move a truck in which the same had been brought to the place involved and where help was actually secured to meet such an emergency. Conceding the general rule, no such emergency here appears. The act to be done, the moving of the car, did not require an extra man and there was no reason why Steuernagel could not leave what he was doing and attend to this duty. This is not even a case where it appears that he was not available for this purpose as he was just inside the garage and it would have taken but a moment to go and inform him of the situation. Not only could he reasonably perform the service himself but the act performed was not done at his request or in his presence. The testimony is that he had not told Andreola to move the car. His statement that they could not leave the car in the street alone indicates that he expected the car to remain where it was, and Andreola's testimony that he decided to move the car for Steuernagel after first calling to him, prevents any inference that Andreola considered that he had been told to move the car or acted upon such an instruction. While Steuernagel was not far away the moving of the car could not be said to have been done in his presence, within the meaning of the rule referred to, since he was inside the building, cars were parked between, and the evidence shows that his back was turned and that

he knew nothing of the whole occurrence until he heard the crash. In our opinion, the Cypress Petroleum Company is not liable for any negligence of Andreola upon any theory of his employment by their servant Steuernagel.

For largely the same reasons, no relationship of master and servant or principal and agent appears as between Steuernagel and Andreola. Andreola's act in moving the car was based upon his own decision and not upon any employment, express or implied. He was actuated by friendship for Steuernagel and, believing that it was Steuernagel's duty to move the car, he first tried to call him for that purpose and then decided to do the act for him. In taking this responsibility upon himself he was a mere volunteer. We think this situation conclusively appears from the evidence and that it was not a matter upon which the jury were entitled to draw a different conclusion. (*Stoddard* v. *Fiske, supra.*)

The views herein expressed make it unnecessary to consider a number of other points presented.

The judgment appealed from is reversed in so far as the same relates to the two appellants.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 29, 1933, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 31, 1933.