[Civ. No. 11065. First Appellate District, Division One.—May 1, 1940.]

ANGELO MECCHI, Jr., a Minor, etc., et al., Respondents, v. LYON VAN & STORAGE CO. (a Corporation), Appellant.

Charles V. Barfield and Hadsell, Sweet, Ingalls & Lamb for Appellant.

Joseph F. Leonard and Jesse H. Miller for Respondents.

WARD, J.—An appeal by defendant Lyon Van & Storage Co., a corporation, from a judgment in the sum of $10,000 in favor of Angelo Mecchi, a minor, rendered in an action brought by V. Mecchi, his guardian *ad litem,* for personal injuries suffered by the minor, and from a judgment in favor of the father V. Mecchi in the sum of $790.94, to cover the costs of hospitalization, medical care, etc. Each of the judgments was against the defendants Lyon Van & Storage Co., a corporation and Louis S. De Benedetti. The latter did not appeal.

On the date of the accident, the minor, between five and six years of age, had been playing in front of or near the residence of his parents on the north side of Filbert Street, between Mason and Taylor Streets, in the city and county of San Francisco. Filbert Street, at the place of the accident, measures 38 feet 9 inches from curb to curb. In this block, two automobiles were parked a few feet apart on the north side of the street, parallel with the curb. A moving van, belonging to appellant, measuring 28½ feet with the tail gate down, was delivering household furniture to a residence on the south side of Filbert Street. It was backed up to this residence, its tail gate protruding over the curb and its front

extending into the street. The evidence relative to the position of the van is in conflict, but an inference could reasonably be drawn from the record that its front projected over into the north half of the street, not immediately opposite either of the two parked cars, but rather in the direction of the space between them. The minor was hit by an automobile driven by defendant De Benedetti, who had turned into Filbert Street and was proceeding in a westerly direction, while De Benedetti was attempting to drive through the space left open by the van and the two parked cars for traffic. The boy was picked up about six feet west of the front end of the van.

■ The first contention of appellant is that the judgment is excessive. Injuries were sustained consisting of concussion of the brain, a broken left leg (femur), (which was subsequently bored into and wired), and cuts and bruises about the boy's face. The apposition and alignment of the broken leg are good, but at times the child complains of pain, and he has an "ugly" scar on his face, the appearance of which may be improved but not entirely corrected by plastic surgery.

■ Even if the amount awarded is larger than a reviewing court might think justified, we are not in a position to decrease it unless it appears that the verdict was the result of passion or prejudice or that it is so grossly excessive that the ends of justice warrant a reduction, which the facts do not indicate. (*Morgan* v. *Southern Pac. Co.*, 95 Cal. 501 [30 Pac. 601] ; *Formosa* v. *Yellow Cab Co.*, 31 Cal. App. (2d) 77 [87 Pac. (2d) 716] ; *Gladstone* v. *Fortier*, 22 Cal. App. (2d) 1 [70 Pac. (2d) 255].)

Section 41 of the Traffic Ordinance of the City and County of San Francisco, in effect at the time of the accident, reads: "The operator of a vehicle shall not stand or park such vehicle in a roadway other than parallel with the curb and with the two right hand wheels of the vehicle within one (1) foot of the regularly established curb line, except that upon those streets which have been marked for angle parking, as provided in this section, vehicles shall be parked at the angle to the curb indicated by such marks. The police department is hereby authorized to determine upon what streets angle parking shall be permitted and to indicate such places by the placing of white lines upon the surface of the roadway to indicate the proper angle for parking, provided that such

lines shall not be placed upon, nor shall angle parking be permitted upon any street where such parking would diminish the width of the roadway available for travel to less than twenty (20) feet, nor upon any street where there is less than thirty (30) feet between the curb and the nearest rail of any street car track, nor upon any arterial street.''

The above ordinance was admitted in evidence, over defendants' objection that it was ''incompetent, irrelevant and immaterial, having no relation to the facts involved in this case'', but upon a stipulation that no white lines had been placed on Filbert Street between Mason and Taylor Streets for the purpose of permitting angle parking, and that the police department had never designated such block for angle parking.

The accident occurred on the 10th day of June, 1937. Section 588 of the California Vehicle Code was amended in 1937, but did not become effective until August 27th of that year. (Stats. 1937, chap. 323, p. 702.) This section at the time of the accident provided: ''Except when loading or unloading merchandise, no person shall park or leave standing any vehicle at the curb or edge of a through state highway unless both right wheels of the vehicle are within eighteen inches of the curb or edge of such highway.'' (Stats. 1935, chap. 714, p. 1929 [see p. 193].) Section 458 of the Vehicle Code, applicable to the 1935 provision of section 588 reads: ''The provisions of this division are applicable and uniform throughout the State and in all counties and municipalities therein and no local authority shall enact or enforce any ordinance on the matters covered by this division unless expressly authorized herein.'' Section 459 provided in part: ''The provisions of this division shall not prevent local authorities within the reasonable exercise of the police power from adopting rules and regulations by ordinance or resolution on the following matters: (g) Designating any highway as a through highway and requiring that all vehicles stop before entering or crossing the same or designating any intersection as a 'stop' intersection and requiring all vehicles to stop at one or more entrances to such intersection.''

The ordinance prohibits the standing or parking in a ''roadway'' other than with the two right hand wheels of the vehicle within a certain distance of and parallel to the established curb line, except on streets marked for angle parking.

Section 588 applies to a "through State highway", vehicles engaged in loading or unloading merchandise alone being exempt from its provisions. Appellant's van was parked at an angle and was unloading merchandise. It is appellant's contention that the ordinance, undertaking as it does to deal with vehicles parked or standing at an angle to the curb, and whether or not engaged in loading or unloading, was in conflict with section 588 and therefore invalid in that the legislature had assumed complete jurisdiction over vehicles under such conditions.

In 1935 a "highway" was defined as a way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel. (Vehicle Code, sec. 81, Stats. 1935, chap. 27, p. 98.) As the statutes provided in 1935, and still provide, a "roadway" is that portion of a highway improved, designed or ordinarily used for vehicular travel. (Vehicle Code, sec. 83.) Under the statutes in effect at the time of the accident, a "through highway" or a "through State highway" was not defined. Upon such premise, appellant contends that "roadway" is included in "through State highway". The word "highway" is not synonymous with "roadway". "Roadway" covers a territory for vehicular traffic only. "Highway" covers not only that portion used for vehicular traffic, but also that for pedestrian travel. (Vehicle Code, sec. 84.) A highway may have an unbroken course, or it may have intersecting byways through which other traffic may, with reasonably equal rights, enter or depart. When "stop" signs are erected at the intersecting entrances, it becomes a through highway. A highway or a through highway may be state, county, municipal or even designated as a United States highway. The State Department of Public Works may erect "stop" signs at the entrance to any state highway (Vehicle Code, sec. 471), and local authorities, except by permission from the State Department of Public Works, are prohibited from erecting signaling devices, etc., in such manner as to require the traffic on any state highway to stop before entering or crossing any intersecting highway (Vehicle Code, sec. 466), except that such local authority may designate any highway within its jurisdiction as a "through highway", erect "stop" signs, etc., and require all vehicles to stop before entering or crossing the same. Counties and municipalities are prohibited from enforcing any ordinance

on a subject covered by the provisions of division IX of the Vehicle Code; section 588, contained in that division, refers to loading and unloading merchandise on a through state highway.

If the purpose of section 588 was to permit generally throughout the state angle parking when loading or unloading merchandise, it would have been a very easy matter to have used the word "highway" instead of "through State highway". The fact that prior to 1935, and subsequent thereto, the statute defined certain words and phrases is not controlling in this case. We are bound by the provisions of the statute at the time of the accident. The city and county of San Francisco was entitled and empowered to enforce regulations relative to the parking and standing of vehicles except on a through state highway.

■ Appellant contends that the ordinance is unconstitutional in that it applies to all highways in the city and county of San Francisco; that through state highways are under the supervising provisions of the statute. There is no evidence in the record to show that any state highway runs through or terminates in the city and county of San Francisco. Assuming one did, however, during the period in which we are interested, and that the Vehicle Code provisions were applicable thereto, this would not invalidate a provision in an ordinance applicable only to a city and county "roadway" if the roadway was not in fact a state highway. Section 588 does not provide a method or manner of parking vehicles on the streets or roadways of a county, city and county, or town. No conflict appears in fact or in law and the claim of unconstitutionality of the ordinance cannot be successfully maintained. There is no evidence in the record indicating that Filbert Street, between Mason and Taylor Streets, is a "State highway" or a "through highway", state or otherwise. We conclude, therefore, that so far as the facts in this case are concerned, the ordinance in that respect is not in conflict with the provisions of the Vehicle Code. ■
It is true that traffic regulation has gradually become a state affair, particularly as relates to speed (*Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172]), but when the state confines its exercise of authority to specified highways, there is scope left to the municipal authority, and the exercise of authority within that scope creates no conflict or inconsistency with the legislative scheme.

■ Further objection is made to the constitutionality of the ordinance, in that it vests entire control in the local police department. In a like manner, authority is vested in state departments to control state highways. To enforce an ordinance, a legislative body,—in this case the board of supervisors,—may delegate to the board or commission the right to determine a state of facts upon which an ordinance shall operate. (*Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal. (2d) 620 [91 Pac. (2d) 577]; *In re McLain,* 190 Cal. 376 [212 Pac. 620]; *Flynn* v. *Bledsoe Co.,* 92 Cal. App. 145 [267 Pac. 887]; *Borum* v. *Graham,* 4 Cal. App. (2d) 331 [40 Pac. (2d) 866]; *Gould* v. *Western Dairy Products, Inc.,* 12 Cal. App. (2d) 188 [55 Pac. (2d) 274].) A denial of such right would be " 'to stop the wheels of government' ". (*Union Bridge Co.* v. *United States,* 204 U. S. 364, 387 [27 Sup. Ct. 367, 51 L. Ed. 523].)

The court instructed the jury: "If you find from the evidence in this case that the driver of the Lyon Van & Storage Company van stood the same on Filbert street, between Mason and Taylor streets, in violation of the provisions of the city ordinance, and that said standing of said van was a or the proximate cause of the accident in question and the injuries sustained, then I instruct you that if you so find, it is your duty to find the defendant Lyon Van & Storage Company guilty of negligence."

■ Appellant contends that an instruction, that the violation of an ordinance is negligence as a matter of law, is erroneous if it fails to inform the jury that it may find such violation justifiable or excusable. (*Mora* v. *Favilla,* 186 Cal. 199 [199 Pac. 17].) There is some merit in appellant's contention if the violation was in fact excusable or justifiable, that is, if the violation was beyond the control of the operator of the vehicle, as for instance if there was a cessation in the function of the mechanism of the vehicle, or failure to have a driver's license upon the person of the driver, because misplaced, or if the vehicle was operated on the wrong side of the road to avoid an obstruction. (*Rath* v. *Bankston,* 101 Cal. App. 274 [281 Pac. 1081]; *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195 [215 Pac. 675]; *Gallichotte* v. *California Mutual Building & Loan Assn.,* 4 Cal. App. (2d) 503 [41 Pac. (2d) 349].) "Whether or not a violation of a statute or ordinance proximately contributed to an accident and whether the violation was excusable or justifiable are

questions of fact . . . " (*Scalf* v. *Eicher,* 11 Cal. App. (2d) 44 [53 Pac. (2d) 368]), but the failure to include the language in question or similar language in an instruction when the only inference that may be drawn from the evidence shows that the violation was not justifiable or excusable, is not ground for reversal.

The court also instructed the jury as follows: "Now, speaking of the statute, and these provisions of the ordinance, and also the provisions of the State Motor Vehicle Code, under the law the violation of a statute or ordinance, except provisions relative to speed limits—the violation of a statute or ordinance constitutes negligence as a matter of law. Unless, however, such violation is a proximate cause of injury to another, it becomes immaterial. There must appear to be a causal connection between the violation of law and the injury before the defendant can be held liable.

"I instruct you that any violation of any municipal ordinance that has no proximate causal connection with the accident becomes immaterial. Therefore, even though you find from the evidence that the employee of the defendant Lyon Van & Storage Company may have violated a municipal ordinance in the manner in which he placed the van, in order to unload the same, if you further find that any such violation on his part did not proximately contribute to the accident, but that said accident was solely and proximately due to the negligence of the defendant De Benedetti, if any, or solely and proximately due to the concurrent negligence of the defendant De Benedetti and the plaintiff, Angelo Mecchi, Junior, if any, then, if you so find, I instruct you that you cannot render a verdict against the defendant Lyon Van & Storage Company.

"Of course, on the other hand, if you find by the same reasoning that any violation of a municipal ordinance was the proximate cause of the accident, and you further find that said violation on the part of the defendant did proximately contribute to the accident, or did proximately contribute to it, even though the defendant De Benedetti was connected with the question of the injury, or even though he was concurrently negligent, and you find the plaintiff was not guilty of contributory negligence which proximately contributed to his injury, then you must find your verdict against the Lyon Van & Storage Company or against both defendants."

■ Appellant contends that there was not room to stop and park the van parallel to the curb. Deliberate unlawful parking for personal convenience is not excusable or justifiable. (*Mason* v. *Crawford*, 17 Cal. App. (2d) 529 [62 Pac. (2d) 420].)

■ At the request of appellant the court instructed in substance that no pedestrian shall cross a roadway other than by a route at right angles to the curb, and when crossing at any place other than a cross-walk shall yield the right of way to all vehicles upon the roadway. (Ordinance 7691 (N. S.) of the City and County of San Francisco, sec. 10 [Municipal Code 1939, chap. IX, part II, sec. 20, p. 536].) Appellant contends that there was an undeniable violation of the plain terms of the ordinance and that the violation may . not be excused on account of the minor's age. Assuming that the minor was of sufficient age of discretion, another fact was in dispute, namely, did the minor actually violate the ordinance. ■ Ordinary care on the part of a minor is a question of fact, but the standards is not the same as for an adult. The standard of care is measured by the exigency of the occasion. If an injury occurs as the result of the neglect or refusal to obey the law, the act of disobedience may, even on the part of a child, be a proximate cause of the accident, except where the minor is intellectually so immature that no negligence, statutory or otherwise, may be imputed to him.

The court gave the following instruction: ''In other words, minors, as well as adults, are required to exercise ordinary care; but it is well settled that the ordinary care which a child is required to exercise must be determined by a different rule than is applied in the case of adults. The care which a child is required to exercise is only that degree of care which children of his maturity and capacity under similar circumstances ordinarily exercise; and this degree of care, except in a case where it can be inferred under the evidence that the child not only knew, but realized and apprehended the danger of his conduct, is to be determined—the degree of care is to be determined from the circumstances of the particular case in which his conduct is involved, and under the evidence as presented to the jury; and, of course, there is no precise age at which the law as a matter of law will hold a child accountable or unaccountable for all his actions. The question as to the capacity of a particular child at a particular

time to exercise care to avoid a particular danger is one of fact falling within the province of the jury to determine.

"So, therefore, you can not find in this action that the minor plaintiff Angelo Mecchi was guilty of contributory negligence unless you find from the evidence that he did something which a child of his age and intelligence acting under the same or similar circumstances would not have done, or that he failed to do something that a child of his age and intelligence would have done under the same or similar circumstances."

Under this instruction the jury was permitted to determine whether the minor possessed sufficient intelligence to be held accountable for his actions; whether in fact he violated the terms of the ordinance. Even, eliminating the age of the child, the evidence upon this point was conflicting. The driver of the automobile at one time made a statement that there was a "flash . . . of an object running across from the curb". At another time he stated that he did not know whether the boy was running, walking or standing still. One witness testified that the boy was standing still in the street, between the two parked cars.

This case is quite similar to *McKay* v. *Hedger*, 139 Cal. App. 266 [34 Pac. (2d) 221]. In that case an ice truck was parked, in violation of a statute (Cal. Vehicle Act, sec. 138), away from the curb, so that it obstructed the use of part of the street and interfered with traffic. A minor, of the age of five years and seven months, with several other children approached the rear of the truck for the purpose of obtaining small pieces of ice. An automobilist, driving by the truck, struck the minor who had run from behind the truck into the path of the oncoming automobile. The court said, pages 271, 272: "On the question of contributory negligence it must be borne in mind that Myron was an infant of tender years. Respondent suggests that under the record before us we could conclude, as a matter of law, that the child was not guilty of contributory negligence because of his age. Without deciding this question, we can dispose of this contention of appellants with the following quotation from *Woodman* v. *Hemet Union High School District*, 136 Cal. App. 544 [29 Pac. (2d) 257] : 'The answer to this contention is found in the tender years of the boy. In *Barrett* v. *Harman*, 115 Cal. App. 283 [1 Pac. (2d) 458], a boy of the age of eleven years was injured. The court there said: "The de-

fense of contributory negligence may be invoked in an action by or on behalf of a child where the latter was of an age sufficient to exercise discretion for the avoidance of injury; but a child is not held to the same degree of care as an adult, and is only required to exercise that degree of care which is ordinarily exercised by minors of like age, mental capacity and discretion. There is no precise age at which as a matter of law a child is to be held accountable for his actions to the same extent as one of full age, and the question as to the capacity of a child at a particular time to exercise care to avoid a particular danger is one of fact for the jury. (*Cahill* v. *E. B. & A. L. Stone Co.*, 167 Cal. 126 [138 Pac. 712].)'' '' ''

 If the employees of appellant violated a valid parking ordinance, and, conceding the correctness of the jury's implied finding that the minor was not guilty of contributory negligence, we are still faced with the question, was the evidence sufficient to show that the accident and consequent injury would not have happened but for appellant's negligent parking. In other words, were the acts of De Benedetti alone the proximate cause, or did they conjoin with the violation of the ordinance by appellant to produce this accident. The sequence of facts, one to another, and the relation of negligent precipitous acts or omissions to primary continuing negligent acts, and the determination of whether the causation was independent or concurrent are questions of fact. (*Whelan* v. *Bigelow,* 33 Cal. App. (2d) 717 [92 Pac. (2d) 952].) There is some evidence to indicate that De Benedetti in guiding his vehicle between the parked cars and the illegally parked van was forced to drive so that the presence of the minor was not readily and easily ascertainable. By the finding impliedly determining that the negligence of De Benedetti was concurrent with the negligence of the appellant, we may not interfere. In *McKay* v. *Hedger, supra,* at pages 274, 275, the court said: ''Omitting from consideration negligence arising from the violation of some law or ordinance, negligence is either positive or passive in its nature. It is the doing of some act which a reasonably prudent person would not do, or the failure to do some act, or to take some precaution which a reasonably prudent person would do under the circumstances. It must result in some injury to person or property which must be so situated or related to the negligent actor in point of time and place that he must owe the duty of not committing the injury, and under such cir-

cumstances that the one guilty of negligence, if he had used ordinary prudence and foresight, should have foreseen that the injury was a result to be anticipated. Measured by these rules we have concluded that the question of whether or not the parking of the ice truck in Lewis Avenue at a considerable distance from the curb was negligence under the facts here disclosed was a question of fact to be determined by the jury. . . . Any adult should realize the nature of children at play and should so regulate his conduct that his carelessness does not result in unnecessary injury to them. . . . The primary causation may be so continuous that a concurrent wrongful act precipitating the disaster will in law be regarded not as independent, but as conjoining with the original act to create the disastrous result.''

 Appellant requested an instruction that no insurance company was a party to or interested in the action. An instruction covering the same subject in a modified form, taken from the language in *Brown* v. *Yocum,* 113 Cal. App. 621 [298 Pac. 845], was given. In that case the appellate court did not attempt to formulate an instruction, but only to state a principle. However, without analyzing the language thereof, and assuming that appellant's offered instruction would have been more favorable to appellant, no prejudicial error resulted from the giving of the instruction in modified form.

 Appellant further objects that certain formula instructions did not contain certain essential elements. If not contained in each formula instruction, the same matter appears in the next instruction or in other instructions, so that it is apparent that no harm to appellant's cause resulted.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1940, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing is denied.

Such denial should not be deemed an approval of the language found in the last paragraph of the opinion in so far

as said language may imply a rule relating to formula instructions in conflict with the rule as stated in *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390, at page 393 [264 Pac. 237].