[Civ. No. 13403. Second Dist., Div. Two. Apr. 25, 1942.]

JAMES E. BURKE, Respondent, v. W. R. CHAMBERLIN & COMPANY (a Corporation) et al., Defendants; W. R. CHAMBERLIN, Appellant.

Lasher B. Gallagher and Murray H. Roberts for Appellant.

Herbert R. Lande for Respondent.

MOORE, P. J.—Plaintiff's action is for damages resulting from injuries received while at work in the hold of defen-

dant's steamship moored in Los Angeles Harbor. While so working a 4" x 4" timber, four feet long, herein referred to as a landing block, was catapulted from the dock causing the serious bodily bruises of which he has complained. He at first sued San Pedro Lumber Company, whose agent had superinduced the flight of the landing block from the surface of the dock. For a consideration he agreed by a writing to dismiss that action and not to prosecute the Lumber Company again.

We have before us two questions, namely (1) Does the evidence support the finding of the negligence of appellant? (2) Do the agreement and the dismissal of the first action constitute a retraxit of his claim against appellant?

Appellant was the managing owner of the steamship "W. R. Chamberlin, Jr." which, laden with lumber was moored at the dock of the San Pedro Lumber Company. Plaintiff was engaged as a seaman by defendant to assist in the unloading of the cargo from the steamship to the dock. The lumber was lifted from the vessel with a sling. Each sling load was 2 feet high and 2 feet wide. Four of such loads make a load for the lumber carrier, a ten-ton gas propelled machine which removed the lumber from the dock. One Norris Perry, an employee of the San Pedro Lumber Company operated the carrier. In preparing for the arrival of the sling load and the approach of the carrier to its position for receiving its burden, two carrier blocks are placed on the dock. The blocks are made so that the operator of the carrier can project his lifting device underneath the carrier blocks and raise the lumber and the blocks in order to drive the carrier to the place for depositing the lumber. The blocks are placed so that the sling loads lie at right angles across both of them. The events preceding the accident occurred in this fashion: while Perry in his carrier was near the position designated for placing temporarily an extra load of lumber, he instructed the longshoremen, employees of defendant, to put the extra load between the places for the regular carrier load and the edge of the dock. In arranging for the extra load, they took two landing blocks, (four foot timbers, 4 inches wide and 4 inches thick) and laid them at right angles to, and one end of each upon, the stringer which ran along the edge of the dock and about 6 inches above its asphalt surface. Here the extra load should lie

until the usual location for a carrier load would be cleared for a new load upon the carrier blocks. On Perry's return the full carrier load lay in position opposite the location at which the men had placed the landing blocks resting on the stringer. After lifting the carrier load off the dock Perry backed his machine and turned his wheels four inches to the right in order to veer away from the gang plank which extended on to the dock about 10 feet. In doing so, the right front wheel of the carrier ran upon the end of one of the landing blocks which Perry had not seen before and which the stevedores had permitted to remain after the extra load had been removed from them. The timber was so pinched by the 10 inch tire of the carrier that it was catapulted from the dock into the hold of the vessel where all the seamen were building up loads. It struck respondent's head and body, causing his injuries.

The finding of the court with reference to the accident is substantially as follows: while the vessel was moored in Los Angeles harbor, plaintiff was at work in its hold, unloading lumber and acting within the scope of his employment; that at the same time the employees of the defendant, acting within the scope of their employment, negligently placed certain timbers in the path of the lumber carrier which was then traveling on the dock and allowed them to remain adjacent to the ship and as a proximate result thereof, the carrier rolled upon one of the pieces and caused it to fly through the air and down into the hold of the vessel and to strike the head and body of plaintiff and to cause his injuries. Said injuries were directly and proximately caused by the negligence of the employees of defendant.

(1) Appellant contends that there is not sufficient evidence to support the finding that his employee was negligent in placing the two landing blocks upon the dock. But the evidence is sufficient. It is established that the longshoremen knew of the perils that attended the placing of timbers as large as the landing blocks in close proximity to a load of lumber lying upon carrier blocks. They placed the landing blocks between the place for the regular carrier load and the edge of the dock for the purpose of making a temporary location for an odd load. After Perry had removed the regular load which lay near at hand, a stevedore removed the odd load of lumber from the landing blocks on to carrier blocks and left the landing blocks lying where they had been

placed. The same employees of defendant stood by from the time the odd load was removed from the landing blocks. They knew of the risk of leaving those blocks on the dock near the lanes of travel of the carrier. Moreover they had placed them so that they did not lie flat on the dock but so that an end of each lay upon the surface of the stringer some 6 inches higher than the asphalt surface. They knew that space was limited. After they had removed the odd load from the landing blocks, at the edge of the dock to the carrier blocks in their regular positions, they knew that such load would momentarily be taken away by Perry with his carrier. While the driver of the carrier was occupied with the operation of his machine within the narrow confines of the dock, the trial court was justified in finding negligence on the part of the longshoremen who left the two landing blocks so near the position for the regular load as to make it probable that a tire would run upon them. Such leaving of these timbers upon the dock might verily have been the efficient and proximate cause of the flight of one of them into the hold of the steamship as was impliedly found.

The question whether such negligence of the longshoremen was a proximate cause of plaintiff's injuries was a question for the determination of the triers of fact. (*Lacy* v. *Pacific Gas & Electric Co.,* 220 Cal. 97 [29 P. (2d) 781] ; *Taylor* v. *Oakland Scavenger Co.,* 17 Cal. (2d) 694 [110 P. (2d) 1044] ; *Mecchi* v. *Lyon Van & Storage Co.,* 38 Cal. App. (2d) 674, 686 [102 P. (2d) 422, 104 P. (2d) 26].) ''The sequence of facts, one to another and the relation of negligent precipitous acts or omissions to primary continuing negligent acts, and the determination of whether the causation was independent or concurrent are questions of fact.'' (*Mecchi* v. *Lyon Van & Storage, supra.*)

Appellant argues that the negligence of Perry in ignoring the presence of the landing blocks and in negligently driving upon one of them was an efficient, intervening cause of the accident. But Perry had not seen the blocks while the stevedores knew that it was usual for the carrier to run upon the timbers lying on the dock and they knew that when it did so it was likely to catapult such timber into space. By the exercise of ordinary care, such fact should be anticipated by a person of slight experience. The stevedores had enjoyed long experience on this very dock. They were conscious of the narrow confines within which the carrier must operate and of Perry's pre-occupation with the manipulation

of that machine. The extension of the gangway some 10 feet on to the dock required the operator to direct his carrier toward the ends and where the blocks had lain in order to clear the gangway. They knew that they customarily "marked the places on the dock outlining the spots where these blocks were to be placed each time to get them in straight position" as guides for the carrier's driver. They knew that the surface of the dock in that vicinity should be kept clear for the carrier which was due to return at any moment for the purpose of removing the regular load then ready in its usual place. To keep the dock surface clear was one of their duties. They are bound to have known that one of the timbers was likely to be crushed or squeezed by the wheels of the carrier. Hence to leave them in a dangerous location was to render probable the catapulting of the blocks into the air. In the exercise of ordinary care, they should have foreseen not only the return of the carrier but also the probability that it would run over one of the blocks since they were near the waiting load. Their failure to anticipate the movement of the carrier over the timbers was negligence which justified the finding that such failure constituted the proximate and efficient cause of plaintiff's injuries. ■ When a person has caused a dangerous instrumentality to be placed in a position in which it may effect injurious results to others, such person is answerable for such injuries as may ensue in the ordinary course of events even though an intervening cause serve as a condition on which the dangerous instrumentality may have acted to effect the injuries. The intervention of any number of agencies may operate upon the original wrongful act to effect the painful result but if they could, by the exercise of reasonable care, have been foreseen by the first wrongful actor, his negligent act continues to be a proximate cause. (*Newman* v. *Steuernagel*, 132 Cal. App. 417 [22 P. (2d) 780]; *Hale* v. *Pac. Tel. & Tel. Co.*, 42 Cal. App. 55 [183 Pac. 280]; *Keiper* v. *Pacific Gas & Electric Co.*, 36 Cal. App 362 [172 Pac. 180].)

■ That Perry's conduct might have been negligent would not necessarily render it an intervening efficient cause. (Restatement of Torts, § 449; Prosser on Torts, pp. 354 et seq.; 19 Cal. Jur. 570.) Moreover, if we should concede Perry's act to have been negligent and to have been a concurring cause of plaintiff's injury, this would render defendant none the less liable. (*Lacy* v. *Pacific Gas & Electric Co., supra;*

*Harmon* v. *M. H. Sherman Co.*, 29 Cal. App. (2d) 580 [85 P. (2d) 205]; *Pastene* v. *Adams*, 49 Cal. 87.) Both appellant and the San Pedro Lumber Company would be responsible to plaintiff if their negligent acts had concurred.

The cases cited by defendant (*Kline* v. *Moyer*, 325 Pa. 357 [191 Atl. 43, 111 A. L. R. 406]; *Rae* v. *California Equipment Co.*, 12 Cal. (2d) 563, 570 [86 P. (2d) 352]; *Johnson* v. *Union Furniture Co.*, 31 Cal. App. (2d) 234 [87 P. (2d) 917]) do not apply. The Kline case attempts to state the law of a sister state. As to the other authorities, they do not apply because the findings in those cases were that the consequences of an intervening cause could not have been reasonably anticipated.

█ (2) We come now to a consideration of appellant's claim that the dismissal of the original action filed against the San Pedro Lumber Co. constituted a release or retraxit. The accident occurred May 11, 1939. Two days later plaintiff retained counsel to secure an "adjustment, settlement or judgment" of his claim against S. S. W. R. Chamberlin, and San Pedro Lumber Co. and all others who may be liable by reason of his claim.

He authorized his attorney to take whatever steps he might deem necessary to prosecute his claim including the filing of suit or other action. For such services he was to pay his attorney 40 per cent of all sums secured in any manner from his claim and assigned to his attorney a lien to that extent upon all such moneys so secured or retained; no settlement to be made without the consent of such attorney. Thereafter on May 26, 1939, he filed his action No. L. B. C-9145 in the Superior Court of Los Angeles County against the San Pedro Lumber Co., John Doe Corporation, and John Doe.

By his complaint he charged the defendants with the identical acts that are alleged in the complaint in the instant case.

After the San Pedro Lumber Company had filed its answer consisting of a denial of any negligence on the part of the company and of the special defenses that the plaintiff's injuries were proximately caused by the negligence of plaintiff and "by the negligence of plaintiff thereunto contributing," the lumber company effected a settlement with plaintiff in words and figures as follows:

"AGREEMENT

"WHEREAS, on or about the 11th day of May, 1939, the undersigned, James E. Burke, hereinafter sometimes referred to as 'Burke,' while employed on the steamship 'W. R. Chamberlin, Jr.,' sustained injuries occasioned by being struck on the head and back with a piece of timber, and,

"WHEREAS, Burke claims that the injuries sustained by him as aforesaid were a proximate result of negligence on the part of an employee of San Pedro Lumber Company, a California corporation; and

"WHEREAS, Burke has heretofore caused to be filed in the Superior Court of the State of California, in and for the County of Los Angeles, an action brought against said San Pedro Lumber Company for damages in the amount of Fifteen Thousand Dollars ($15,000.00) for said injuries so sustained; and

"WHEREAS, San Pedro Lumber Company denied that it or any of its employees or agents were negligent or responsible for the injuries sustained by Burke,

"NOW, THEREFORE, in consideration of the sum of One Thousand Seven Hundred and Fifty Dollars ($1,750.00) to Burke in hand paid, receipt of which is hereby acknowledged,

"THIS INSTRUMENT WITNESSETH:

"(1) Burke agrees that said above mentioned action against the San Pedro Lumber Company shall be forthwith dismissed and Burke does hereby authorize and direct his attorney, Herbert R. Lande, to cause said action to be forthwith dismissed.

"(2) Burke agrees that he will not file suit, or cause suit to be filed, founded on the accident occasioning said injuries, against San Pedro Lumber Company, or its successors in business, or its stockholders or directors in any court and that he will not file or prosecute any claim for damages or other compensation against San Pedro Lumber Company before any Board, Commission, Bureau, or administrative body, for any damages or compensation to which said Burke, save for this agreement, might otherwise be entitled, based on the injuries sustained by him in said accident, or for any other cause whatever arising at any time prior to the date of this instrument.

"(3) Burke agrees that, in the event he brings any action of whatsoever kind or nature, founded on the accident occasion-

ing said injuries, either in any court or before any Board, Commission, Bureau, or administrative body, against any person, firm, corporation or vessel, he will cause notice of such action and the proceedings therein to be given Edward Hervey, Attorney-at-Law, 458 South Spring Street, Los Angeles, California, to the end that said San Pedro Lumber Company may be advised of said proceeding and, in the event any right or subrogation or contribution should eventuate in favor of any such person, firm, or corporation or vessel, against San Pedro Lumber Company, then Burke shall, and he does, hereby agree that he will protect, indemnify and save harmless the said San Pedro Lumber Company from any loss occasioned thereby.

"(4) Burke hereby certifies that he is an unmarried man over the age of twenty-one years.

"The agreements upon the part of Burke to be performed herein set forth shall be binding upon the heirs, devisees, legatees, executors, administrators and assigns of the said Burke.

"(Signed) JAMES E. BURKE.

"Approved: Herbert R. Lande,
    Attorney for James E. Burke.

"Edward Hervey, ⋅
    Attorney for San Pedro Lumber Company."

Following the execution of the foregoing instrument, respondent filed with the clerk his dismissal of the action against the San Pedro Lumber Company in words and figures as follows (omitting court and title of case): "Dismissal. To the Clerk of said Court: You will enter the dismissal of the above entitled action, as to all defendants. Herbert R. Lande, Attorney for Plaintiff."

Thereafter on the 10th day of January, 1940, respondent filed the present action under the Jones Act (46 U. S. Code, §688) for damages for the same injuries as those described in his action against the San Pedro Lumber Company. He alleged that W. R. Chamberlin was the owner and operator, having full management, direction and control of the steamship and that at all times mentioned plaintiff was employed by the defendant and while acting within the course and scope of his employment in the hold of such vessel, he received his injuries.

As a special defense, defendant Chamberlin pleaded the

filing of the action L.B. C-9145, the issuance of summons, the answer of the San Pedro Lumber Company and its agreement with Burke and the filing of the dismissal of the action, and "as a consideration for the execution of said agreement executed on the 25th day of October, 1939, plaintiff received of and from said San Pedro Lumber Company the sum of $1,750" in consideration of which plaintiff dismissed his action against the San Pedro Lumber Company.

Also, by his answer appellant alleged the execution of the agreement between plaintiff and his attorney by which the attorney was employed to prosecute plaintiff's claim and that plaintiff was fully and completely aware of the exact and specific terms of the agreement between plaintiff and attorney Lande. Upon the issue created by the special defense, the finding of the court was as follows:

"It is true that the aforesaid agreement is a covenant not to sue the San Pedro Lumber Company and is not a release given by the plaintiff to the San Pedro Lumber Company. That it is true that the plaintiff received the sum of $1,750 from the San Pedro Lumber Company as consideration for the execution of said agreement. That it is not true that the plaintiff received or intended to receive the said sum of $1,750 as compensation or in satisfaction of his injuries."

Upon such finding the court concluded that the agreement between plaintiff and the San Pedro Lumber Company was a covenant not to sue and is not a bar to the present action and that the sum received by plaintiff by virtue of such agreement inures *pro tanto* to the benefit of defendant Chamberlin, which sum should be subtracted from the amount of damages found to have been suffered by plaintiff.

The agreement provides that plaintiff shall dismiss his action against the San Pedro Lumber Company; that he will not file a suit against the lumber company; and that if he files suit against any other party, he will protect and indemnify the lumber company for any loss occasioned thereby. Clearly this constituted a covenant not to sue but to indemnify the lumber company. It was not a release of the tort feasors whose negligence had caused plaintiff's injuries. It was nothing more than an agreement to cease his action against the lumber company and not to use it again. (*Lewis* v. *Johnson*, 12 Cal. (2d) 558, 563 [86 P. (2d) 99] ; *Kincheloe* v. *Retail Credit Co.*, 4 Cal. (2d) 21 [46 P. (2d) 971] ; *Ellis* v. *Jewett Rhodes Motor Co.*, 29 Cal. App. (2d) 395 [84 P. (2d) 791].)

Appellant makes the contention that respondent received

the money from the San Pedro Lumber Company as satisfaction for his injuries. This contention finds no support in the record. It is clear to us that the money was not received in settlement of his claim. Appellant supports his argument with that clause in the attorney's contract providing that the attorney should receive a fee from plaintiff only in the event plaintiff should obtain money on a judgment or effect a settlement of the claim. However that is not the only clause in the contract pertaining to counsel's compensation. It is also stipulated that 40 per cent of all sums received by plaintiff in any manner shall be payable to his attorney. It does not suggest that fees to go to the attorney shall be payable only in the event plaintiff recover damages or obtain a settlement of his action against the San Pedro Lumber Company. The fees of counsel became due if sums should be recovered "in any manner."

The dismissal filed by plaintiff in action L.B. C-9145 was not a dismissal with prejudice. If it had been such dismissal there would have been no occasion for the provision that plaintiff shall not sue the lumber company. Unless an order for dismissal on file with the clerk provide that the dismissal is with prejudice, it is then a dismissal without prejudice. *Lewis* v. *Johnson, supra.* The dismissal of an action operates as a bar to its renewal only when the dismissal is based upon, and entered in pursuance of, an agreement of the parties and when it is understood by them to amount to an adjustment of the merits of their controversy. (*Westbay* v. *Gray,* 116 Cal. 660, 666 [48 Pac. 800].) Where it is made to appear from the language of the agreement to dismiss that the parties intended a dismissal without prejudice, the plaintiff is at liberty to file a new action.

The contention of appellant that the dismissal entered by plaintiff in the action L.B. C-9145 was a retraxit has no support in the law. In order to constitute a retraxit, a judgment of dismissal must be made in open court upon motion of plaintiff's counsel of record when plaintiff understands that he is thereby renouncing forever his cause of action alleged against the defendant. (*Westbay* v. *Gray, supra; Crossman* v. *Davis,* 79 Cal. 603, 604 [21 Pac. 963] ; *Merritt* v. *Campbell,* 47 Cal. 542; *Stoutenborough* v. *Board of Education,* 104 Cal. 664, 667 [38 Pac. 449].)

The facts of *Lewis* v. *Johnson, supra,* are parallel to those of the case at bar. In that case, action had been brought against a physician and the hospital as joint tort feasors. During the

progress of the trial, plaintiff received the sum of $5,000 and agreed not to sue the hospital further or to prosecute any action against it. The dismissal following such agreement not to sue was held to be a voluntary dismissal and not a release or a retraxit. "Unlike a release, a covenant not to sue one joint tort feasor does not relieve the others." (*Lewis* v. *Johnson, supra.*) A dismissal entered by a clerk by virtue of section 581, subdivision 1, Code Civ. Proc., without prejudice, is a far cry from a judgment of dismissal ordered by the court following a voluntary renunciation of the action.

Judgment is affirmed.

Wood (W. J.), J., concurred.

McCOMB, J., dissenting.—I dissent. It is my belief that the opinion of the majority of this court fails to distinguish between the doctrine applicable in the case of a retraxit and the doctrine which should be applied in the case of the release of one joint tort feasor. It is my view that the latter doctrine is applicable to the facts of the present case. These facts are:

May 11, 1939, the appealing defendant W. R. Chamberlin was the managing owner of the steamship "W. R. Chamberlin, Jr." The vessel was moored alongside a dock in Los Angeles Harbor while lumber was being unloaded from the vessel to the dock. The San Pedro Lumber Company was assisting in the removal of the cargo. One of its employees, while operating a lumber carrier, struck a block of wood which had been placed on the dock, causing the block to fly through the air and strike and injure plaintiff, who was working in the hold of the ship. Subsequently plaintiff filed a complaint against the San Pedro Lumber Company to recover damages for his injury.

Thereafter plaintiff and the San Pedro Lumber Company entered into an agreement reading in part as follows:

"WHEREAS, on or about the 11th day of May, 1939, the undersigned, James E. Burke, hereinafter sometimes referred to as 'Burke,' while employed on the Steamship 'W. R. Chamberlin, Jr.,' sustained injuries occasioned by being struck on the head and back with a piece of timber; and

"WHEREAS, Burke claims that the injuries sustained by him as aforesaid were a proximate result of negligence on the part of an employee of San Pedro Lumber Company, a California corporation; and

"WHEREAS, Burke has heretofore caused to be filed in the Superior Court of the State of California, in and for the

County of Los Angeles, an action brought against said San Pedro Lumber Company for damages in the amount of Fifteen Thousand Dollars ($15,000.00) for said injuries so sustained; and

"WHEREAS, San Pedro Lumber Company denies that it or any of its employees or agents were negligent or responsible for the injuries sustained by Burke;

"NOW, THEREFORE, in consideration of the sum of One Thousand Seven Hundred and Fifty Dollars ($1,750.00) to Burke in hand paid, receipt of which is hereby acknowledged,

"THIS INSTRUMENT WITNESSETH:

"(1) Burke agrees that said above mentioned action against the San Pedro Lumber Company shall be forthwith dismissed and Burke does hereby authorize and direct his attorney, Herbert R. Lande, to cause said action to be forthwith dismissed.

"(2) Burke agrees that he will not file suit, or cause suit to be filed, founded on the accident occasioning said injuries, against San Pedro Lumber Company, or its successors in business, or its stockholders or directors in any court and that he will not file or prosecute any claim for damages or other compensation against San Pedro Lumber Company before any Board, Commission, Bureau, or administrative body, for any damages or compensation to which said Burke, save for this agreement, might otherwise be entitled, based on the injuries sustained by him in said accident, or for any other cause whatever arising at any time prior to the date of this instrument.

"(3) Burke agrees that, in the event he brings any action of whatsoever kind or nature, founded on the accident occasioning said injuries, either in any court or before any board, Commission, Bureau, or administrative body, against any person, firm, corporation or vessel, he will cause notice of such action and the proceedings therein to be given Edward Hervey, Attorney-at-Law, 458 South Spring Street, Los Angeles, California, to the end that said San Pedro Lumber Company may be advised of said proceeding and, in the event any right or subrogation or contribution should eventuate in favor of any such person, firm, or corporation or vessel, against San Pedro Lumber Company, then Burke shall, and he does, hereby agree that he will protect, indemnify and save harmless the said San Pedro Lumber Company from any loss occasioned thereby."

On October 26, 1939, plaintiff filed with the clerk of the Superior Court of the state of California a dismissal of the action

which he had theretofore filed against the San Pedro Lumber Company.

It is conceded that the latter company paid to the plaintiff as consideration for the above mentioned agreement and dismissal the sum of $1,750. Defendant in the present action pleaded as a defense in its answer the facts relative to the settlement between the plaintiff and the San Pedro Lumber Company.

This is the sole question necessary to be determined:

*Did the above stated facts constitute the release of one who was a joint tort feasor with defendant, thereby releasing defendant from any liability to plaintiff on the cause of action set forth in the present complaint?*

This question must be answered in the affirmative. It is settled that the release of one joint tort feasor releases all of the joint tort feasors (*Bogardus* v. *O'Dea,* 105 Cal. App. 189, 192 [287 Pac. 149]; 22 Cal. Jur. (1925) 763, sec. 12; vol. 2, Bancroft's Pleading, Practice and Remedies, Ten Year Supp. (1937) 1604, sec. 537).

It is likewise established that the bar does not arise from any particular form that the proceedings assume but from the fact that the injured party has actually received satisfaction (*Urton* v. *Price,* 57 Cal. 270, 272).

In *Bogardus* v. *O'Dea, supra,* at page 192, this court said:

". . . As said in *Chetwood* v. *California Nat. Bank,* 113 Cal. 414 [45 Pac. 704, 707]: 'While plaintiff may sue one or all of joint tort feasors, and while he may maintain separate actions against them, and cause separate judgments to be entered in such actions, he can have but one satisfaction. Once paid for the injury he has suffered, by any one of the joint tort feasors, his right to proceed further against the others is at an end . . . The reason is quite obvious. *By his withdrawal, plaintiff announces that he has received satisfaction for the injury complained of,* and it would be unjust that he should be allowed double payment for the single wrong. It matters not, either, whether the payment made was in a large or in a small amount. If it be accepted in satisfaction of the cause of action against the one, it is in law a satisfaction of the claim against them all.' (Italics ours.) In *Flynn* v. *Manson,* 19 Cal. App. 400 [126 Pac. 181], the action was against several defendants for the recovery of damages for tort. The plaintiff dismissed as to one of the defendants, the dismissal, however, containing a provision that it was not the intention of the plaintiff to release

the other defendants from liability. The remaining defendants moved for dismissal of the action as to them, upon the same ground as that urged in the instant case. Affirming the judgment of dismissal which followed the order granting this motion, the court held that the release, notwithstanding the saving clause, was a discharge not only as to the defendant as to whom the dismissal was filed, but as to his co-defendants. To the same effect are the decisions in *Tompkins* v. *Clay Street R. R. Co.*, 66 Cal. 163 [4 Pac. 1165], and *Urton* v. *Price*, 57 Cal. 270, 272.''

Applying the foregoing rules to the facts of the instant case, it is evident that the plaintiff intended to receive and did receive satisfaction for the injury he had received from the San Pedro Lumber Company, and intended to and did release such party from any and all liability in connection with the injuries he had suffered. It therefore appears that plaintiff, having released one of two joint tort feasors, as a matter of law released the other tort feasor from further liability, with the result that the trial court was in error in giving judgment to the plaintiff in the present action.

*Lewis* v. *Johnson*, 12 Cal. (2d) 558 [86 P. (2d) 99], is inapplicable to the facts of the instant case, for the reason that the document in question in such case was denominated, ''Covenant not to Sue and Covenant Not to Sue Further,'' and was in fact a covenant not to sue; while the document in the present case, coupled with the dismissal of the action filed by plaintiff against San Pedro Lumber Company constituted in fact a release of the latter and satisfaction of plaintiff's claim for damages resulting from his injury. Had plaintiff commenced a second action against San Pedro Lumber Company upon the same cause of action set forth in the first complaint, the defendant company could have pleaded the agreement to dismiss the first action for a consideration of $1,750 and the dismissal with the written consent of the attorneys of record in that action as a bar to the subsequent suit. The rule is stated thus in *Hawber* v. *Raley*, 92 Cal. App. 701, 704 [268 Pac. 943] :

''It would therefore appear to be a rule of construction that where two or more tort feasors are involved and the document is such that the convenantee may plead the same in abatement of any action which the covenantor might subsequently commence in breach of the obligation contained in said document and the remedy thereunder is not restricted to an action on the

covenant, the document constitutes a release and satisfaction, and not a mere covenant not to sue.''

The conclusions which I have reached render it unnecessary for me to discuss the various other points presented by counsel.

For the foregoing reasons in my opinion the judgment should be reversed.

Appellant's petition for a hearing by the Supreme Court was denied June 22, 1942.