[Civ. No. 9657. First Appellate District, Division Two.—October 4, 1935.]

GEORGE FRANKLIN MOUNTS, Respondent, v. GEORGE TZUGARES et al., Appellants.

Decoto & St. Sure and Weinmann, Quayle & Berry for Appellants.

Clifton Hildebrand and Goodman, Bachrack & Brownstone for Respondent.

STURTEVANT, J.—In an action brought to recover damages for personal injuries sustained in an automobile collision the jury returned a verdict awarding the plaintiff $28,000. From the judgment entered thereon the defendants have appealed.

The accident occurred on January 11, 1934, at about 4 o'clock in the afternoon. It was a clear day and the road and pavement were dry. The accident occurred on the road leading from Oakland to Stockton at a point about three-quarters of a mile beyond the town of Livermore. At that point a house known as the Schenoni residence stands on the

north side of the highway and closely adjacent. West of that house the highway extends along a straight line for some distance. Commencing near the westerly end of the house the highway curves slightly toward the north. Generally speaking the highway pavement is 37 feet wide as the road approaches from the west. However, at a point where the curve commences the road is widened on each side and, at the focal point of the accident, the pavement is 43 feet wide. A white strip four inches wide extends along the middle, dividing the highway into two lanes. In the form of a crescent a side road commences at the highway, leads toward the house and then swings back into the highway. A short time before the accident a one-and-a-half-ton Ford truck owned by the defendant Tzugares and operated by the defendant Angelakis was driving west on the highway. Tire trouble occurred and Angelakis stopped his truck approximately in front of the house. There was evidence that it was so stopped with all four wheels on the pavement. Angelakis alighted and proceeded to change tires and was in the act of replacing the extra at the rear end of his truck. At about that time a truck and trailer owned by the defendant Mardesich, operated by defendant C. D. Rice, and having a load of box shook, approached from the east. The truck and trailer were about 45 feet long, 7½ feet wide, and the gross weight of the load, truck and trailer was about 25 tons. From the west two automobiles approached. One, a Chrysler, six feet wide, was being operated by the plaintiff Mounts; the other one, which for the purposes of this decision we will call the "X" car, was operated by some other person, whose name the record does not disclose. At a point 200 feet west of the impact the "X" car was proceeding along the southerly edge of the pavement at a speed of approximately 40 miles an hour. The plaintiff Mounts had been driving 45 miles an hour and on overtaking the "X" car he turned to the left, drove forward until he was about opposite the rear wheels of the "X" car, and reduced his speed to 35 or 40 miles an hour. At the time Mounts overtook the "X" car he had a view of the highway 500 feet ahead. He saw the Ford truck and that it was at a standstill. The Chrysler car with the "X" car on its right proceeded at 35 or 40 miles an hour. When about 75 feet west of the parked truck, Mounts testified he saw the

truck and trailer for the first time. At that time the truck and trailer were about 75 feet east of the parked truck. The truck and trailer turned to the left to pass the Ford truck and at that time were traveling about 20 miles an hour. The Chrysler and "X" car continued forward at 35 or 40 miles an hour. At a point a short distance west of the front end of the Ford truck the left side of the Chrysler collided with the left side of the truck and trailer.

■ The defendants Tzugares and Angelakis contend they were not guilty of negligence and they claim that the Ford truck was parked with all four wheels north of the highway. On that subject the evidence is directly conflicting. If the jury believed the testimony of witnesses called by the plaintiff, and from its verdict we must assume it did, then the jury could find that the Ford truck was parked with all four wheels on the pavement. If it was so parked that was an act in violation of the terms of the California Vehicle Act. (2 Deering's Gen. Laws, p. 2451, sec. 136.) It is not even contended that the Ford truck was moved before the collision. The negligence of these defendants was therefore a continuing act and their claim that they were not negligent may not be sustained.

■ Not waiving other points made by them, these defendants contend that their said acts, negligent or not negligent, were in no manner the proximate, or any cause of the accident. (*McMillan* v. *Thompson*, 140 Cal. App. 437 [35 Pac. (2d) 419].) They contend that the truck and trailer had a safe margin to pass the parked truck in the north lane without encroaching on the south lane to any extent whatever. The plaintiff produced a diagram prepared by an engineer. It is drawn to scale and shows the highway for a distance of 240 feet both east and west of the middle line of the Schenoni house if extended. The defendants produced a similar diagram. The curve hereinabove mentioned is very slight—one per cent or thereabout—and commences at approximately the point of the collision. The pavement, at the point where the plaintiff claimed the collision occurred, is 43 feet wide and the Ford truck 6½ feet wide was parked according to the contention of the plaintiff's witness six inches from the outside edge of the pavement. Six inches plus 6½ feet are seven feet. The north lane was 21½ feet wide.

There was, therefore, a space of 14½ feet, practically straight, between the parked truck and the white line in the middle of the highway. The truck and trailer were 7½ feet wide. It does not appear that under the facts as recited the position of the Ford truck forced the truck and trailer into the south lane or in any manner contributed toward the accident. The burden rested on the plaintiff and he did not sustain it as to these defendants.

The defendants Rice and Mardesich claim they were not negligent. In that connection they contend the truck and trailer at no time crossed the white line. As to whether it did or not the evidence was conflicting. There was evidence to the effect that immediately before the collision the left side of the front of the truck was a foot and a half, or more, over the south side of the white line. When the collision occurred the left front wheel of the truck was broken off. Thereupon the truck skidded forward making prominent marks on the surface of the highway south of the white line. Those physical facts are also opposed to the contention of these defendants and support the verdict of the jury.

All of the defendants contend the plaintiff was guilty of contributory negligence as a matter of law. Many different theories are advanced. The defendants Tzugares and Angelakis call our attention to the parts of the record showing: That when 200 feet west of the point of collision the plaintiff had a clear view of the highway for a distance 300 to 500 feet east of said point; that he then pulled out from the south edge of the pavement for the purpose of overtaking and passing the "X" car and to assume a position on the highway to the left of that car; that as he did so he saw the parked truck on the highway and decided to defer passing the "X" car until a point beyond the parked truck was reached; that when 75 feet west of the point of collision the plaintiff saw the truck and trailer attempting to pass the parked truck; and that from the time he saw the parked truck until the collision with the truck and trailer it was inevitable that if plaintiff maintained the same relative position on the highway—to the left and abreast of the "X" car—a collision would occur. The defendants then assert that plaintiff violated section 122 (b) of the California Vehicle Act, *supra*, but there was no evidence that before attempt-

ing to pass the "X" car the plaintiff did not drive as closely as practicable to the right edge or curb of the highway. It is next asserted that plaintiff violated section 124 (a). But there is no evidence that the plaintiff attempted to do otherwise than to drive to the right of the truck and trailer, giving to them at least one-half of the main traveled portion of the highway. Again it is contended that the plaintiff violated section 127 (a), but there is no evidence that the plaintiff followed the "X" car. He drove by its side. The highway was 43 feet wide. His half was 21 feet and the statute contains no provision precluding the plaintiff and the "X" car from traveling side by side so long as they remained in their half of the traveled portion of the highway.

 The other defendants rely on and quote from *Donat* v. *Dillon,* 192 Cal. 426, where, at page 429 [221 Pac. 193, 194] the court says: "A motorist must at all times use due care to avoid colliding with another; he must be ever alert and watchful, so as not to place himself in danger, and while he may assume that others will exercise due care, he cannot for that reason omit any of the care which the law demands of him." There is no question but that the rule as there stated is correct. In arguing contributory negligence to the jury as a matter of fact, no doubt counsel earnestly pressed the rule. But contributory negligence as a matter of fact was passed on by the jury and, as the evidence was conflicting, no such question is before this court for review.

 The next point is that the defendants Tzugares and Angelakis claim that plaintiff's counsel was guilty of prejudicial misconduct. Two separate acts are stated. When Dr. Barnard, a witness called for the plaintiff, was being examined, the plaintiff's attorney asked him to show the jury the injury the plaintiff had suffered regarding his arm. Thereupon one of the attorneys for these defendants stated that he was defending on nonliability for the accident. However, he did not interpose a formal objection. Plaintiff's attorney then stated, "Go ahead, Doctor." The doctor did so and partly removed bandages and exposed the arm of the plaintiff to the jury. No objection was made except as stated. Under these circumstances we think the record does not support the contention. In his complaint the plaintiff had alleged his injuries. Those allegations had been denied by all

of the defendants. These defendants did not amend their answer nor withdraw their denials. The other defendants did not participate by interposing an objection or offering a stipulation. Because counsel for these defendants in effect offered to stipulate that he was not questioning the medical evidence, did not alter the right of the plaintiff to prove his case as against the other defendants.

The other incident on which it is claimed there was misconduct brings up the following facts. After all of the evidence had been introduced the trial court directed counsel to proceed with their arguments. Thereupon the following proceedings were had: "Mr. Hildebrand (attorney for plaintiff): Gentlemen, may we stipulate that at your request Dr. Eaves and Dr. Holcomb examined the plaintiff? Mr. Weinmann: No such stipulation from me." Thereupon, over the objection and exception of the defendants, Mr. Berry was called as a witness and testified that when Mr. Weinmann was absent in Oregon the witness authorized Dr. Eaves to examine the plaintiff and later Dr. Eaves did so and made a report. The report was not offered in evidence by anybody. The record does not show what the report contained. Still later, without the presence of the jury and after argument had, the court ordered the testimony given by Mr. Berry and any stipulations made as to the absence of Doctors Eaves and Holcomb be stricken out. Still later the trial court fully admonished the jury to disregard the testimony and to draw no presumption therefrom. We see no prejudicial error regarding either of the assignments.

These defendants contend that the verdict, $28,000, was excessive. The contention may not be sustained. At the time the plaintiff was injured his expectancy was 14.74 years. He was an active officer of the Brotherhood of Railroad Carmen and was receiving a monthly salary of $315. Prior to the accident he was an active, robust man engaged in active business. Subsequent to the accident he had a shattered and useless arm, and five broken ribs, and two fractures of one shoulder blade. He developed traumatic pneumonia and a severe infection of the wounds in his arm. He is completely and totally and permanently disabled and unable to engage in any business. After the accident happened he incurred special damages in the sum of $2,344.20. Under these

circumstances we think it is clear it may not be said the verdict returned by the jury was the result of passion, prejudice or corruption on the part of the jury.

The judgment is affirmed against the defendants Mardesich and Rice, but as to the defendants Tzugares and Angelakis it is reversed and they will recover their costs on appeal.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 2, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 2, 1935.