[Civ. No. 10955. First Appellate District, Division Two.—July 21, 1939.]

EDWARD WHELAN, a Minor, etc., Respondent, v. LUDO-VICO BIGELOW et al., Appellants.

Burbank & Laumeister and Redman, Alexander & Bacon for Appellants.

Dean Cunha and Daniel R. Shoemaker for Respondent.

STURTEVANT, J.—The plaintiff, a minor, by his guardian, sued to recover damages for personal injuries. The jury returned a verdict in favor of the plaintiff against all of the defendants and they have appealed from the judgment.

The accident occurred on the east side of Ninth Avenue between California and Lake Streets. The two streets last named run east and west, the avenue runs north and south. At about noon on the 9th day of March, 1932, the plaintiff, a boy of about six years of age, had been on the sidewalk on the east side of Ninth Avenue, at a point approximately in the middle of the block. That sidewalk was in front of the hospice occupied by the Volunteers of America. The premises are fifty feet six inches wide. In front of the hospice there were two or more automobiles parked in the avenue immediately adjacent to the sidewalk. A truck owned and operated by City Ice Delivery Company was also parked in front of said premises. The pleadings admitted that it was unlawfully parked. However, the exact spot in which it was located is one of the disputed facts in the case and will hereinafter be

discussed. Ludovico Bigelow, a minor girl, the daughter of James K. Bigelow and Effie L. Bigelow, his wife, was driving a Ford coupe and had been to the branch library. She was returning to her home. She drove from California Street north toward Lake Street on the right hand side of Ninth Avenue until she came to the truck. There was evidence that the truck was so located that the westerly side thereof stood out in the avenue twelve feet or more from the curb. It was facing to the south. On approaching the truck Miss Bigelow swerved slightly to the left and continued forward, the space between her car and the truck being approximately one foot. Immediately prior to passing the truck her view was wholly obstructed as to objects immediately north of the truck. As she drove forward and came about even with the rear end of the ice truck she saw the plaintiff, "a flash of brown", come against the side of the fender on the right hand side of the front of her car. She was not positive but she thought the plaintiff was running. Without conflict the evidence shows that when the plaintiff hit the side of the car his body fell back into the avenue, it was not dragged, and the automobile did not run over it. There was evidence that the point of contact in the street was three or four feet out from the westerly side of the truck and five or six feet back from the rear end of the truck. When Miss Bigelow saw the flash of brown she slammed on her brakes and the wheels cut into the pavement making two marks, one thirty-one feet long and the other one thirty-three feet long extending to within approximately two feet of a manhole that is located on about the middle line of Ninth Avenue and about on the northerly line of the hospice if said line is extended. Miss Bigelow's car crossed the manhole and continued thirty or forty feet to the north and then came to a full stop.

As Miss Bigelow came from the south, she testified she was traveling about twenty miles an hour. Mr. Beggs, a pedestrian walking south on the westerly sidewalk from Lake Street toward California Street, was looking at the car and testified, at least in one part of his testimony, that the car was traveling twenty-five or thirty miles an hour. The avenue is forty feet wide and it was stipulated that the place of the accident is a residence district.

When the plaintiff fell over into the street, blood commenced to flow from the wounds on his head and a pool of

blood accumulated before the body was picked up. A few minutes after the plaintiff had been taken to the hospital the blood was washed up, but that left a wet spot the location of which was testified to by various witnesses. They did not exactly agree in their testimony as to its location, however all agree that the spot was near the manhole. No single witness testified that he made a measurement. A diagram, drawn to a scale, was used on the trial. Some witnesses placed marks on it locating the spot. One mark indicates a distance of two feet southeast, another one indicates a distance of three feet south-southeast, and another mark indicates nine feet south-southeast, from the center of the manhole.

As to the location of the truck, there is a great deal of conflict in the evidence. There was some evidence that it was double-parked and that the rear end was almost opposite the front entrance to the hospice. There was some evidence that it was not parked parallel to the curb but at an angle. Again there was evidence that it was parked from twenty to twenty-five feet further south.

In accordance with the provisions of section 62 of the statute (2 Deering's Gen. Laws, 1931, p. 2476) the father and mother of Miss Bigelow signed her application for an operator's license. They were made parties defendant. The father, mother, and daughter appealed from the judgment. City Ice Delivery Company, a corporation, also appealed. We will now discuss those appeals separately.

## The Bigelow Appeal.

The defendants Bigelow contend the evidence does not support the implied finding of the jury that Miss Bigelow was negligent. That she was driving on the proper side of the highway is not disputed. However, there is much conflict in the evidence regarding her speed being lawful and regarding the rate being prudent at the particular time and place of the accident. There was some evidence to the effect she was driving in excess of twenty-five miles an hour, that being so, the burden rested on the plaintiff to establish that the operation of her car at such speed constituted negligence. As shown above, the plaintiff introduced evidence on that subject. The jury found the facts against the defendants. We may not say those implied findings are not sustained. Furthermore, Miss Bigelow, at the particular time and place, was bound to " . . . drive the same at a careful and prudent

speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person.'' (Stats. 1931, p. 2120, sec. 113, sub. [a].) Bearing in mind the facts hereinabove recited, we think it is clear that the plaintiff presented and was entitled to have the jury pass on the question as to whether or not the rate of speed of Miss Bigelow's car was, at the particular time, in violation of the provisions of the statute just quoted. That her view was obstructed immediately before passing the rear end of the truck is a conceded fact. Under any view of the evidence she was driving at such a rate of speed that when she saw the danger she applied her brakes, her car ran fifteen or twenty feet, the collision occurred, the car ran ten or fifteen feet further with the brakes still set, and then it ran fifteen to thirty feet further before coming to a stop. These conclusions are shown by the physical facts and supported by testimony. It will be conceded at once that the record contains evidence at variance with the evidence which we have hereinabove set forth. But the assertion of these defendants that there was no evidence to support an implied finding may not be sustained.

In the next place these defendants assert that the plaintiff was guilty of contributory negligence as a matter of law. They concede the general rule is that the question of contributory negligence of a minor child is ordinarily a question of fact for the jury. However, it is their claim that the record shows the plaintiff was six years and two months of age; that he was a normal child of normal intelligence; that he attended a grade school and traversed the streets four times a day; and that he had been warned by his mother not to cross the avenue alone. Such facts show he was an ordinary child, but do not at all show that as a matter of law he was to be taken out of the operation of the ordinary rule applicable to a charge of contributory negligence.

Acting upon the request of the plaintiff, the trial court instructed the jury. ''A driver of an automobile is bound to anticipate that he may meet pedestrians on the street. He must keep a proper outlook and so operate his car as to prevent injuring them if after the exercise of due care on his part it is possible to do so.'' They then assert that said instruction placed upon Miss Bigelow the unquali-

fied duty of anticipating the presence of the child in the street as a pedestrian. However, when the instruction objected to is read in connection with the other instructions given by the trial court we find no valid objection thereto.

These three defendants contend that $15,000, the amount of the verdict, was excessive. The doctor who treated the plaintiff was called as a witness and made a full statement regarding the treatment that had been necessary and the results. The plaintiff's skull was fractured. It became necessary to operate and remove particles of bone and drain out the accumulated pus. After a time the wound was healed. As a result of the fracture, the plaintiff has suffered the loss of seven-tenths of the normal functions of the left eye and definite impairment to the right eye. His face is permanently deformed. Furthermore, the effect of the fracture has caused mental derangement in the past and the possibility of more in the future. He has been directed by his doctor not to participate in active sports. If he gets highly excited, he is apt to go into tantrums. In the past the doctor has been compelled to prescribe a sedative for the plaintiff and the doctor is of the opinion it will always be necessary for plaintiff to take some kind of a sedative. Under these circumstances a court of review may not say the verdict was so plainly and outrageously excessive as to suggest at first blush passion, or prejudice, or corruption on the part of the jury. (*Reneau* v. *Hirsch*, 88 Cal. App. 1, 6 [262 Pac. 1100].)

### Appeal of City Ice Delivery Company.

The defendant, City Ice Delivery Company, also contends that the verdict was not supported by the evidence. It quotes from the reporter's transcript evidence to the effect that its truck was parked from twenty-seven and a half to forty-five feet south of the place where the impact occurred. It argues that conceding it was negligent, nevertheless such negligence was remote and was not a proximate cause of the accident. We think the point may not be sustained. Conceding there was a conflict in the evidence, it is very clear there was evidence to the effect that the distance between the rear end of the truck and the point of impact was not more than six or eight feet. The direct evidence shows it was impossible that the distance should have been forty-five feet. There were only two eye witnesses, Miss Bigelow and Mr. Beggs. Without regard to where the truck stood, both of

those witnesses assert the impact took place very close to the rear end of the truck. Again, freely conceding the conflict in the evidence, this court may not say the verdict of the jury against this defendant is not supported by the evidence.

The defendant contends it was entitled to have instructions given presenting its theory of the case to the jury. We do not understand that the plaintiff controverts that contention. The defendant requested two instructions which the trial court refused to give. They were to the general effect that if the negligence of Miss Bigelow was the sole and proximate cause of the accident then the City Ice Delivery Company could not be held. Both instructions were correct statements of the law. But, so were the following instructions which were given:

"You are instructed that no defendant may be held liable in this case unless it appears from the evidence, first, that such defendant was guilty of some negligence, and second, that such negligence, if any, was the proximate cause of the injury to plaintiff; and, third, that plaintiff himself was free from contributory negligence.

"Notwithstanding the fact that this action has been brought against several defendants, you are nevertheless not entitled to return a verdict against a defendant or defendants against whom no liability has been established regardless of what verdict you return as between plaintiff and any other defendant or defendants." Furthermore, the trial court caused to be handed to the jury four separate forms of verdict. One of those forms would have been a verdict completely exonerating this defendant; however, the jury did not choose to adopt it. Under these circumstances we think it is clear the substance of the two instructions which the defendant claims should have been given was given, and that this defendant was not prejudiced by the refusal.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 19, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 18, 1939. Edmonds, J., voted for a hearing.