[Civ. No. 3906. Fourth Dist. Jan. 12, 1949.]

ELLA SIPPERLY et al., Respondents, v. SAN DIEGO YELLOW CABS, INC. (a Corporation) et al., Appellants.

DeWitt A. Higgs and C. Guy Selleck, Jr., for Appellants.

Johnson & Johnson and C. Ashley Johnson for Respondents.

GRIFFIN, J.—Defendants San Diego Yellow Cabs, Incorporated, a public carrier, and Raymond R. Jennings, its employee, appeal from a judgment rendered against them for personal injuries received by plaintiffs. Defendant Ernest C. Ramsey defaulted and is not interested as a party on this appeal.

A Chevrolet taxicab owned by the cab company and driven by Jennings, stopped to pick up plaintiffs and their baggage near 4811 University Avenue, which avenue runs east and west and is 50 feet wide, paved and bounded by sidewalk and curb. On the south side of the street and in front of the address here mentioned, there is a 19 foot 6 inch paved approach or runway from the curb leading to a double garage set back about 20 feet from the curb line. Beginning at 49th Street and running westerly on University Avenue to 48th Street there is an incline in the grade of approximately 6 feet. The crest of the street is a few feet east of 48th Street and about 70 feet west of the driveway here involved. About 8 p. m. on December 1, 1945, plaintiffs were visiting with their son at the above address. They were about to leave there and go to their home on Puterbaugh Street. Mr. Sipperly went to an oil station near 48th Street and University Avenue, met the cab driver, and ordered a cab. He was told that after the cab driver had finished a call toward La Mesa, farther east, he would return and pick them up. On his return he proceeded westerly on University and when opposite 4811, he cut across the street and headed the cab either into the driveway mentioned or in a westerly direction along the south curb. (The evidence on this point is in great conflict and will be discussed later.) A Ford coupé, owned by a Mr. Knauss, who resided in the front house at No. 4813, was parked in proper fashion on University Avenue near the curb about 10-15 feet west of the driveway to the garage and headed easterly. Plaintiff Mr. Sipperly was at that time waiting on the sidewalk for the cab. He gave some luggage to the driver who placed it in back of the cab and then went to the rear house at 4811 to notify his wife. She came out, carrying her grandchild in her arms. The cab driver helped her and the baby into the rear seat of the cab from its left side. About that time a Tudor Ford sedan owned by defendant Ramsey came easterly on Univer-

sity Avenue at a high rate of speed, and ran into the left rear portion of Knauss's parked car, forcing it ahead into the taxicab. The gas tank on Knauss's car collapsed and caused gasoline to spread all around the surrounding area. Mrs. Sipperly and the baby were thrown out of the cab through the open left door. The gasoline ignited and burned plaintiff Mrs. Sipperly quite badly. She had on a fur coat and it caught fire. Mr. Sipperly, who had been standing on the sidewalk, rushed into the flames, saved the baby, and with the help of defendant driver, rescued his wife from beneath the Knauss car, and with the help of others, extinguished the fire from her burning clothes. In doing so, plaintiff Carl E. Sipperly received less severe burns than his wife. The taxicab and the Knauss car were later found, bumper to bumper, extending out into University Avenue. The Ramsey car was about in the position formerly occupied by the Knauss car but closer to the driveway.

The two plaintiffs testified that when the cab first came across the street and stopped, its headlights were on; that it stopped with its left wheels near the south curb between the driveway and the Knauss car and headed in a westerly direction; that the back end of the cab was closer to the curb than the front end. Mrs. Sipperly testified that she thought it was necessary for her to step down from the curb into the street to get into the cab but she would not say for sure; that at that time the lights on the cab were burning "bright" but not "full strength."

Defendant Jennings testified that he first came across University Avenue as described, but ran up onto the driveway with his cab and parked it at an angle; that his right rear fender was two or three feet north of the south curb line of University Avenue as extended across the driveway and the left rear fender was not north of that line; that he turned off his headlights and turned on the dim lights as soon as he parked in that position; that the Knauss car was parked, as indicated, about 10-15 feet west of his taxicab. The evidence shows that the front portion of the right front fender down to the right front door panel of the taxicab was crushed. This fact might well indicate that that portion of the taxicab was parked immediately in front of Knauss's parked car, with the rear of the cab extending out into University Avenue several feet. (It was agreed that the cab was 16 feet in length over all and 6 feet wide.) As further corroboration of this fact it was shown that there were "sidewise" rubber marks about

3 or 4 feet long, indicated on the driveway about 3 feet south of the prolonged curb line, which might well have indicated marks left by the front wheels of the cab sliding sidewise.

The testimony of defendant Ramsey is rather curious. Testifying on behalf of defendants he said that he and a sailor named "Mac" had been drinking together that afternoon in Tiny's Cafe on University Avenue near 47th Street; that about 8 p. m. "Mac" volunteered to drive him home; that he (Ramsey) had been drinking "a little bit of everything" and didn't remember very much; that he "passed out" in the car and didn't see any lights or the automobile which his car struck; that at the time of the collision he saw a "ball of fire"; that he got out of his car and walked about two blocks down the street and was later apprehended by the police; that he did not know what happened to "Mac." By way of impeachment it was shown that Ramsey pleaded guilty to "hit and run" driving. It was further shown that he made statements to several witnesses that night that he did remember that as he came down University Avenue "the lights blinded him" and that he said to the sailor "Look out, Mac, there is a car coming out from the side." This evidence was admitted against defendant Ramsey only, under repeated and proper instructions of the court.

The owner of Tiny's Café testified that she quit serving Ramsey liquor that evening because "he had enough"; that there was no sailor drinking with Ramsey and that Ramsey left alone and said he was going home; that at that time his car was parked in front of her place of business and headed easterly.

Upon this evidence the jury returned a verdict against all defendants in favor of Mr. Sipperly for $2,257 and in favor of Mrs. Sipperly for $57,772.56 which, on a motion for new trial, was reduced to $42,772.56. Due to the seriousness of the injuries no complaint is made as to the amount of the several judgments.

The main contention on this appeal is that the evidence was insufficient to establish the fact that plaintiffs' injuries were the proximate result of any negligent act or omission of these appellants or either of them; that there was no evidence upon which the jury could reasonably conclude that the "ultimate result" was an act which should reasonably have been foreseen and anticipated as a result of defendants' original negligence, if any, citing such cases as *Angelis* v. *Foster*, 24 Cal.App.2d 541, 543 [75 P.2d 650]; *Stasulat* v. *Pacific G. & E. Co.*, 8 Cal.

2d 631, 637 [67 P.2d 678] ; *Mounts* v. *Tzugares,* 9 Cal.App.2d 327 [49 P.2d 883] ; *Yates* v. *Morotti,* 120 Cal.App. 710 [8 P.2d 519] ; *Hale* v. *Pacific Tel. & Tel. Co.,* 42 Cal.App. 55 [183 P. 280] ; 22 R.C.L. § 19, p. 134 (38 Am.Jur. [Negligence], §§ 56, 67 and 69) ; *Osgood* v. *City of San Diego,* 17 Cal.App.2d 345 [62 P.2d 195] ; and *Hubbert* v. *Aztec Brewing Company,* 26 Cal.App.2d 664, 689 [80 P.2d 185, 1016].

The trial court properly instructed the jury to the effect that appellants owed to plaintiff Mrs. Sipperly the utmost care and diligence for her safety, and as for Mr. Sipperly only ordinary care was required.

Plaintiffs pleaded and there was admitted into evidence, without objection, a traffic ordinance adopted by the city of San Diego on April 21, 1942, regulating the traffic upon the public streets of San Diego. The ordinance was admitted under a stipulation that such ordinance was "in force and effect at that time." Section 27 thereof reads:

"STANDING OR PARKING CLOSE TO CURB.

"(a)  Except where diagonal parking is permitted and so designated in the manner prescribed by Section 3 hereof, no person shall park or leave standing any vehicle at the curb or end of a street not under the jurisdiction of the State unless both right wheels are within eighteen (18) inches of the curb or edge of such street; provided, however, that any motor truck or commercial vehicle may remain backed up to the curb when loading or unloading merchandise between the hours of 6 :00 o'clock P. M. and 10 :30 o'clock A. M. of the day following."

In its instructions the trial court referred to this ordinance and instructed the jury that its "requirements are those which the plaintiffs have alleged" and that "conduct in violation of the ordinance which has been mentioned, would raise a presumption that the one committing the violation was negligent." The jury was further instructed that the violation of certain provisions of the Vehicle Code therein mentioned constituted negligence and that if such negligence was the proximate cause of the injuries then plaintiffs may be entitled to recover. Appellants vigorously attack this ordinance as being invalid and void, *ab initio,* and therefore the giving of the instruction based thereon was prejudicially erroneous because this section of the ordinance conflicts with the provisions of sections 588 and 458 of the Vehicle Code, which provide:

"Sec. 588 [1945]. (a) Except as otherwise provided in this section every vehicle stopped or parked upon a roadway where there are adjacent curbs shall be so stopped or parked with the right-hand wheels of such vehicle parallel with and within 18 inches of the right-hand curb. This paragraph shall not apply to a commercial vehicle when loading or unloading merchandise or passengers."

"Sec. 458. The provisions of this division are applicable and uniform throughout the State and in all counties and municipalities therein and no local authority shall enact or enforce any ordinance on the matters covered by this division unless expressly authorized herein."

In support of appellants' contention they cite such cases as *Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515]; and *Ryan* v. *San Diego Electric Railway Co.,* 52 Cal. App.2d 480 [126 P.2d 401].

Appellants contend that the taxi here involved was a commercial vehicle under section 34 of the Vehicle Code and was being loaded with baggage and passengers at the time and therefore it came within the express exception established by the Legislature under section 588 of the Vehicle Code, and since there was no city ordinance adopted under the authority of section 459 of the Vehicle Code regulating the operation of vehicles for hire or commercial vehicles when loading or unloading merchandise or passengers the giving of an instruction based upon the ordinance above mentioned was prejudicially erroneous; that since the ordinance received in evidence was invalid and since there was an instruction given based upon such invalid ordinance the instruction was deemed excepted to under section 647 of the Code of Civil Procedure, citing *Hearn* v. *Gunther,* 57 Cal.App.2d 82 [134 P.2d 3].

Plaintiffs defend the ordinance and instruction based thereon under the theory that even though section 588 of the Vehicle Code does regulate the manner in which *vehicles* shall be parked, section 459 of the Vehicle Code provides that local authorities shall not be prevented from adopting rules and regulations by ordinance pertaining to "(b) licensing and regulating the operation of vehicles for hire"; that section 588 of the Vehicle Code does not apply to "a commercial vehicle when loading or unloading merchandise or passengers" and that therefore this ordinance was valid because it was, at least, applicable to such taxicab since it was a commercial vehicle or a "vehicle for hire" and was loading passengers at the time; that authority to regulate in connection with the

operation of such a class of vehicles was particularly left to the local authorities and that it is clear that the state did not intend to occupy the entire field pertaining to the parking of all vehicles; that since there is no provision in the Vehicle Code pertaining to the subject of parking of commercial vehicles while unloading passengers the ordinance under discussion was applicable to the cab here involved, citing *Mecchi v. Lyon Van & Storage Co.*, 38 Cal.App.2d 674, 686 [102 P.2d 422].

It is interesting to note that the provisions of section 588 of the Vehicle Code, effective at the time this ordinance was passed in 1942, merely regulated the parking of any vehicle on a *state highway*. It is conceded that University Avenue was not a state highway. Therefore, as respects city streets, the adoption of the ordinance under question, at that time, was well within the authority of the city council, and the ordinance was valid and its provisions applied to vehicles for hire as well as commercial vehicles. (See *Mecchi v. Lyon Van & Storage Co., supra.*) In 1945, the Legislature amended section 588 of the Vehicle Code and thereafter that section applied to "every vehicle . . . parked upon a *roadway*" but specifically exempted its operation as to commercial vehicles when loading or unloading merchandise or passengers. Under section 459 of the Vehicle Code the city also retained authority to regulate the operation of *vehicles for hire*. Since a portion of the section of the ordinance in reference to the parking of vehicles on city streets other than commercial vehicles may be duplicated in the language of the amendment of section 588 of the Vehicle Code in 1945, which provisions are not in conflict with the ordinance, some question might properly arise as to whether that portion of the ordinance was valid or enforceable thereafter. (*In re Portnoy*, 21 Cal.2d 237 [131 P. 2d 1].)

The real question presented is whether the claimed invalidity of that portion of the ordinance rendered the entire section invalid or whether the ordinance may be legally enforced as to commercial vehicles and vehicles for hire.

In 18 California Jurisprudence, page 933, section 218, the general rule is stated to be:

"If part of an ordinance as enacted is invalid, but is distinctly separable from the remainder, such remainder may stand, and the invalid portion may be rejected." (Citing cases.) "But an ordinance may be composed of such interrelated parts that an unforeseen failure of one part may jus-

tify the assumption that, in its mutilated form, it would not have been enacted. This rule, however, resting as it does upon the presumed intent of the law-makers, *does not apply to an ordinance* the provisions of which *when enacted were valid* and strictly within the constitutional power of the city . . . When, since its adoption, a superior power has supervened with a fundamental governing law at *variance with some of its terms.* In such a case the ordinance is valid in so far as it does not conflict with the regulations of the superior power. The situation, it is said, might afford a reason for repeal or for amendment to conform to the altered conditions, but it affords no ground for judicial repeal.'' (Italics ours.)

The ordinance here under discussion comes within the rule last stated and we prefer to rest upon it rather than to conclude that there was no ordinance in the city respecting the parking of commercial vehicles and vehicles for hire under the conditions related. ▆▆ We prefer to hold that the ordinance did apply under these circumstances and the court fairly instructed the jury on the subject. In support of this conclusion see *Mecchi* v. *Lyon Van & Storage Co., supra,* p. 681; and *In re Hixson,* 61 Cal.App. 200 [214 P. 677]. The ordinance requires all vehicles, including vehicles for hire and commercial vehicles, to park in the same manner as that required by Vehicle Code, section 588, except that it permits commercial vehicles to remain backed up to the curb when loading or unloading merchandise between certain hours.

▆▆ As to the sufficiency of the evidence to support the verdict against these appellants, and whether the plaintiffs' injuries were the proximate result of any negligent act or omission of the appellants, we should here state, as also indicated by the trial judge in denying a motion for a verdict *non obstante veredicto,* that plaintiffs' idea as to where the taxicab was parked was, in all probability, ''wrong.'' There is an inference that the rear of the parked taxicab projected beyond the line of legally parked automobiles and into the traveled portion of the roadway and if that inference might be indulged in it would follow that the driver of the cab should have anticipated somebody might strike the right side of his cab. (*Reed* v. *City of San Diego,* 77 Cal.App.2d 860 [177 P.2d 21].)

We likewise have the contention of plaintiffs that the taxicab was parked in a westerly direction, in violation of the city ordinance, on the south curb line of University Avenue, with the front end extending out from the curb some distance

with the lights shining brightly in a westerly direction on University Avenue.

In *Mecchi* v. *Lyon Van & Storage Co., supra,* it is said that deliberate, unlawful parking for personal convenience is not excusable or justifiable, citing *Mason* v. *Crawford,* 17 Cal. App.2d 529. [62 P.2d 420].

It is true that Ramsey testified that he was not driving the car and was asleep at the time and therefore it would follow, if his testimony is to be believed, that he was not confused by the lights on appellants' taxicab or its position in the street. It is highly probable that the jury disregarded his testimony in this respect. It had a right to believe that he was in fact driving the car. The statement he made after the accident that he told ''Mac,'' the claimed sailor driver, to ''look out, there is a car coming there,'' might well indicate that Ramsey did in fact become confused by the lights of appellants' cab or its position in the street. It is true that this evidence was admitted against Ramsey only, but this would not preclude the jury from believing, from the other circumstances related, that Ramsey was driving the car and did in fact become confused by the conditions presented to him as he came over the crest of the incline. The sequence of facts, one to another, and the relation of negligent precipitous acts or omissions to primary continuing negligent acts, and the determination of whether the causation was independent or concurrent were questions of fact for the jury. (*Whelan* v. *Bigelow,* 33 Cal. App.2d 717 [92 P.2d 952].)

By the verdict the finding of the jury was that the negligence of Ramsey was concurrent with the negligence of the appellants. While the facts here presented present a close factual question as to that, the jury was thoroughly and properly instructed on the issue. On a motion for new trial this question was thoroughly considered by the trial judge and a new trial was denied. It cannot be held that the finding of the jury is without evidentiary support.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied February 11, 1949, and appellants' petition for a hearing by the Supreme Court was denied March 10, 1949. Schauer, J., voted for a hearing.