[Civ. No. 17094.  First Dist., Div. One.  Dec. 3, 1956.]

PATRICIA U. RIGGS, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Theodore M. Monell and John H. Smissaert for Appellant.

Dion R. Holm, City Attorney, and William E. Mullins, Deputy City Attorney, for Respondent.

BRAY, J.—Plaintiff's appeal from an adverse judgment upon a jury verdict raises the sole question of whether the giving of a certain erroneous instruction was prejudicial.

THE INSTRUCTION

"If you find that the plaintiff was not a passenger at the time that she suffered her alleged fall, then the defendant

did not owe any duty to the plaintiff, and hence your verdict must be for the defendant, City and County of San Francisco.''

Obviously, the instruction was erroneous. (Defendant does not contend otherwise.) ■ Public carriers owe to intending passengers and to the public generally a duty to exercise ordinary care to keep from injuring them. (*Connor* v. *Pacific Greyhound Lines* (1951), 104 Cal.App.2d 746 [232 P.2d 500]; *Reilly* v. *California Street Cable R. R. Co.* (1946), 76 Cal.App.2d 620 [173 P.2d 872]; *Sipperly* v. *San Diego Yellow Cabs, Inc.* (1949) (hearing denied by Supreme Court), 89 Cal.App.2d 645 [201 P.2d 543].)

## Was the Error Prejudicial?

■ To determine this question it is first necessary to consider the evidence. Plaintiff testified that she intended to board defendant's trolley bus at the bus stop. Arriving there she observed several people awaiting the bus. It stopped about two feet from the curb and was crowded. Some of the passengers alighted from the front of the bus. Plaintiff was the last of the group getting on. She started to enter the right side of the bus door, which opened inwardly. She had grasped the door handle with her right hand. Her left hand was holding her purse and bus fare. Her right foot was on the bottom step and she was placing her left foot on the second step when she heard the operator ask if everybody was on. She hollered ''No.'' The door then shut, breaking her grip, throwing her backwards so that she fell on the small of her back, striking the curb and injuring her.

One Mower testified that he was also waiting for that bus. It was so crowded that he was undecided whether to get on or not. Two or three persons attempted to get on, the rest staying on the sidewalk. He paid little attention to the other persons so would not remember whether or not he saw plaintiff before the accident. He decided to get on and could get only as far as the first step on the bus. He got on the right hand side of the door. The operator then warned that he was going to close the doors. Mower had to squeeze up onto the next step to clear the door. He could not see the operator. About simultaneously with the closing of the door he heard a scream. Looking around he saw plaintiff lying on the sidewalk and he assisted her to a bench. When asked whether anyone got on behind him, he said, ''No, I couldn't say. That I know, nobody got on behind me.''

Harvey, the bus operator, testified that at the stop the bus was so crowded he could not see if anyone got off nor could he see the door. He inquired if the door was clear and someone said it was. He then closed the door. Before he started the bus some passenger called out not to start it, that there was a woman on the sidewalk who needed assistance. He got off the bus and summoned an ambulance. (While the bus was stopped he saw plaintiff for a fraction of a second crossing the street in front of the bus. Plaintiff testified that she did not arrive at the bus stop from that direction.)

The court fully instructed on the duty of defendant towards plaintiff as a passenger. Under plaintiff's testimony, as she was actually on the bus she, as a matter of law, was a passenger. (See *Riley* v. *Davis*, 57 Cal.App. 477 [207 P. 699].) Harvey's testimony in nowise contradicted her on this subject. While Mower's testimony would indicate that plaintiff had not yet gotten on the bus, as he was occupying the area she claimed to have occupied, yet his testimony did not exclude the possibility that she had entered the bus before the door closed, thereby making her a passenger. From his testimony, when taken with that of the witness Payne, which we will next discuss, it could be concluded that plaintiff at the time the door was closed had not yet acquired the status of a passenger. Thus, there was evidence from which the jury could have determined plaintiff's status as either a passenger or not.

Payne testified that he succeeded in getting on the bus and stood facing the doorway. The bus was "pretty well packed." He saw the operator stand up, get out of his seat a little bit, look at the doors and say " 'Look out, I am going to close the doors.' " He heard no reply to that remark. The doors were closed. Looking out a window he saw a woman "sort of make a little dash, or whatever you want to call it, toward the door, to sort of get on the bus, and 'boom-bo,' she smacked into the doors of the bus and bounced back. . . ." The woman ran three or four steps before hitting the doors.

Plaintiff's complaint is broad enough to support either the theory that she was a passenger and hence defendant owed her the duty of utmost care, or the theory that she had not yet become a passenger but defendant owed her the duty of ordinary care. A reading of the transcript demonstrates that plaintiff tried the case on the passenger theory alone. Defendant injected the nonpassenger theory through its witnesses Mower and Payne, and the offering of the erroneous

instruction. However, it is clear that in spite of the giving of the erroneous instruction the case was submitted to the jury on the sole theory of carrier-passenger. This is demonstrated by the fact that plaintiff offered no instruction on the nonpassenger theory, but did submit instructions on the passenger theory, and by the giving of the following instruction *to which plaintiff does not object*: "If you find that the plaintiff fell before boarding the bus, or any part thereof, then in this case you are instructed that the carrier-passenger relationship did not exist and your verdict must be in favor of the defendant, City and County of San Francisco."

Thus the court in the erroneous and in the last mentioned instruction was, in effect, instructing the jury that there was no issue concerning plaintiff's status as a nonpassenger and that, as a matter of law, there was no evidence of any negligence on the part of defendant as to plaintiff as a nonpassenger. We agree with the trial court in this respect. Under the facts of this case and the manner in which it was tried, plaintiff's sole right to recovery depended upon a finding by the jury that the relationship was that of carrier and passenger. Any other relationship would not have supported a verdict in her favor. Under the circumstances the giving of the erroneous instruction could not have been prejudicial.

Judgment affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 2, 1957, and appellant's petition for a hearing by the Supreme Court was denied January 30, 1957. Carter, J., was of the opinion that the petition should be granted.